UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

|  |  |
|---|---|
| SCOTT ALLAN,<br><br>            Plaintiff,<br><br>vs.<br><br>PROGRESSIVE NORTHERN INSURANCE COMPANY,<br><br>            Defendant. | Case No.: 2:22-cv-01424-GMN-EJY<br><br>**ORDER GRANTING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Pending before the Court is the Motion for Partial Summary Judgment ("MSJ"), (ECF No. 62), filed by Defendant Progressive Northern Insurance Company. Plaintiff Scott Allan filed a Response, (ECF No. 74), to which Progressive filed a Reply, (ECF No. 79). For the reasons discussed below, the Court **GRANTS, in part, and DENIES, in part,** Progressive's Motion for Partial Summary Judgment.

I.     **BACKGROUND**

This case arises out of Plaintiff Scott Allan's claims to Defendant Progressive after two car accidents. (*See generally* Compl., ECF No. 1-1). At the time of the accidents, Allan had an insurance policy with Progressive that included coverage for Uninsured/Underinsured Motorists ("UIM") with limits of $250,000 per person and $500,000 per accident. (Declarations Page, Ex. C to MSJ, ECF No. 62-3). Allan made a $250,000 UIM demand for each accident.

**A. October 11 Accident**

The first accident occurred on October 11, 2020. (Oct. Police Report at 1, Ex. A to MSJ, ECF No. 62-1). Allan told the officer that a driver crossed into his lane and hit the side of his car. (*Id.* at 2). The other driver told the officer that Allan had crossed into her lane, so the officer found neither driver to be at fault due to their differing version of events. (*Id.*). The

officer reported that Allan's vehicle sustained minor damage on its left side. (*Id.*). The other vehicle had no visible damage. (*Id.*). Allan reported the claim to Progressive the same day. (Claims Notes, Ex. D to MSJ, ECF No. 62-4). In a recorded phone call the next day, he stated that he was fine and was concerned about getting his vehicle repaired. (Progressive Phone Call at 20:00–21:45, Ex. F to MSJ, ECF No. 62-6).

Eight days after the accident, Allan went to Dr. Michael Fishell of Advanced Pain Care complaining of face and neck pain, headaches, and tingling down his right arm. (Advanced Pain Care Notes at DEF000997–98, Ex. G to MSJ, ECF No. 62-7). Allan stated that at the time of the collision, his head and torso turned to the left, but the airbags did not deploy. (*Id.*). He began to feel pain within two to three days after the accident. (*Id.*). The doctor noted Allan's previous medical history, including that he was involved in a 1998 car accident requiring surgical correction and had a physical lifestyle that caused knee pain. (*Id.*). But the doctor found that these injuries had no association with the current motor vehicle collision. (*Id.*). Allan reported that his pain ranged between a four and nine on a scale out of ten, and Allan treated the pain with ice and heat while limiting activities of daily living. (*Id.*).

The following month, Allan went to Dr. Ramon Soto of Complete Care Injury Center, complaining of pain to his neck, back, right arm, and right shoulder. (Soto Medical Records, Ex. A to Reply, ECF No. 79-1). The doctor noted that Allan had moderate injuries and that in his professional opinion, the injuries were the result of the motor vehicle collision. (*Id.*).

**B.  December 11 Accident**

The second accident was a rear-end collision that occurred on December 11, 2020. (Dec. Police Report at 1, Ex. C to MSJ, ECF No. 62-3). Allan stopped his vehicle due to traffic ahead when the driver behind him hit his vehicle. (*Id.* at 2). The police report noted damage to the rear of the vehicle. (*Id.* at 5). Allan reported headaches, as well as pain in his neck, right arm, and the right side of his face. (Spinal Rehabilitation Center Notes at DEF001080, Ex. B to

officer reported that Allan's vehicle sustained minor damage on its left side. (*Id.*). The other vehicle had no visible damage. (*Id.*). Allan reported the claim to Progressive the same day. (Claims Notes, Ex. D to MSJ, ECF No. 62-4). In a recorded phone call the next day, he stated that he was fine and was concerned about getting his vehicle repaired. (Progressive Phone Call at 20:00–21:45, Ex. F to MSJ, ECF No. 62-6).

Eight days after the accident, Allan went to Dr. Michael Fishell of Advanced Pain Care complaining of face and neck pain, headaches, and tingling down his right arm. (Advanced Pain Care Notes at DEF000997–98, Ex. G to MSJ, ECF No. 62-7). Allan stated that at the time of the collision, his head and torso turned to the left, but the airbags did not deploy. (*Id.*). He began to feel pain within two to three days after the accident. (*Id.*). The doctor noted Allan's previous medical history, including that he was involved in a 1998 car accident requiring surgical correction and had a physical lifestyle that caused knee pain. (*Id.*). But the doctor found that these injuries had no association with the current motor vehicle collision. (*Id.*). Allan reported that his pain ranged between a four and nine on a scale out of ten, and Allan treated the pain with ice and heat while limiting activities of daily living. (*Id.*).

The following month, Allan went to Dr. Ramon Soto of Complete Care Injury Center, complaining of pain to his neck, back, right arm, and right shoulder. (Soto Medical Records, Ex. A to Reply, ECF No. 79-1). The doctor noted that Allan had moderate injuries and that in his professional opinion, the injuries were the result of the motor vehicle collision. (*Id.*).

**B.  December 11 Accident**

The second accident was a rear-end collision that occurred on December 11, 2020. (Dec. Police Report at 1, Ex. C to MSJ, ECF No. 62-3). Allan stopped his vehicle due to traffic ahead when the driver behind him hit his vehicle. (*Id.* at 2). The police report noted damage to the rear of the vehicle. (*Id.* at 5). Allan reported headaches, as well as pain in his neck, right arm, and the right side of his face. (Spinal Rehabilitation Center Notes at DEF001080, Ex. B to

Reply, ECF No. 79-2). Allan also described residual pain from the first accident. (*Id.*). The airbags did not deploy, but Allan states that "his body was whipped forward/backward at the moment of impact" and that he was disorientated after the impact. (*Id.* at DEF001079). Allan was not taken to the hospital by ambulance but self-transported for medical care five days after the accident. (*Id.*). The doctor noted that Allan's "pain and dysfunction" was "directly related" to the car accident. (*Id.* at DEF001081).

On December 16, 2020, Progressive received a letter of representation from Eric Roy, Esq. (Correspondence at DEF00819–20, Ex. C to Reply, ECF No. 79-3). Two days later, Progressive replied with a list of the information it needed to process the claim. (*Id.* at DEF000821–22). A similar letter, or a letter requesting updates from the attorney, was sent on January 5, 2021, February 1, 2021, February 25, 2021, March 2, 2021, April 9, 2021, May 10, 2021, June 9, 2021, July 8, 2021, August 12, 2021, August 15, 2021, and September 13, 2021. (*Id.* at DEF000830–50). Eric Roy Law Firm replied with a fax on September 13, 2021, attaching three medical bills and requests for payment. (*Id.* at DEF000851). Progressive reviewed the invoices and issued medical payment checks for $3,320 and $1,680, with an explanation of its methods used to calculate the amount paid and instructions to appeal. (Plaintiff's Second Suppl. Rule 26(a) Disclosures at PLTF01234–48, Ex. G to Reply). Progressive asserts that by October 2021, it paid $5,000 in medical expenses for each accident, which is the full amount of medical pay available under the policy. (MSJ 5:7–10).

Ultimately, after conducting Allan's deposition, Progressive extended an offer to resolve the first UIM claim for $16,000 and the second claim for $13,650. (Progressive Offer at DEF001641, Ex. L to MSJ, ECF No. 62-12). The offer letter noted that Allan's medical records indicated a history of back complaints that pre-date the accidents, and that diagnostics showed degenerative issues such as osteophytes. (*Id.*). It further noted that the accidents were minor, and that of the $128,253.00 in medical specials that Allan submitted, $44,570.00 were

considered "reasonable, customary, and related to treatment." (*Id.*).  Allan did not accept the offer and brought the claims at issue in this case: breach of contract, breach of the implied covenant of good faith and fair dealing, unfair claims practices and punitive damages. (Compl. ¶¶ 24–45, ECF No. 1-1).

Progressive now moves for summary judgment.  Progressive's motion was titled "Partial Motion for Summary Judgment," but after the Court noted that the motion was unclear as to whether Progressive was moving for summary judgment on all claims, Progressive filed a notice clarifying that it is seeking summary judgment on all four claims. (*See generally* Notice, ECF No. 81).  Allan filed a Response to the Notice, arguing that the Court should not consider the breach of contract claim as part of the Motion for Partial Summary Judgment, and that even if it does, genuine issues of material fact exist. (*See generally* Resp. to Notice, ECF No. 84). Because Progressive has the initial burden on summary judgment, the Court will construe the Partial Motion for Summary Judgment as moving for summary judgment on all four claims.

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.*  "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).  "Summary judgment is inappropriate if reasonable jurors, drawing all

inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quotation marks and citation omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). However, the nonmoving party "may not rely on

denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by "relying solely on conclusory allegations unsupported by factual data." *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.   DISCUSSION

Progressive moves for summary judgment on Allan's claims for breach of contract, breach of the covenant of good faith and fair dealing, violations of Nevada's Unfair Insurance Claims Practices Act, and punitive damages. In response, Allan objects to the majority of the evidence attached to Progressive's motion, so the Court begins by addressing his evidentiary objections.

### A.   Objections

Throughout his Response, Allan objects to evidence produced by Progressive, or arguments made by Progressive, as not relevant. Rule 401 of the Federal Rules of Evidence ("FRE") defines relevant evidence as evidence with "any tendency to make a fact more or less

probable than it would be without the evidence" if "the fact is of consequence in determining the action." Allan's objections range from conversations he had with Progressive after his accidents, statements regarding injuries obtained or medical treatment received prior to the accidents, and Progressive's offers of payment. (*See generally* Resp.). The Court finds that all evidence included by Progressive is relevant as to whether it acted in bad faith or failed to handle Allan's claim in a reasonable manner. Allan's relevancy objections are thus OVERRULED.

Allan also makes specific objections to Exhibits A, B, C, D, E, F, G, H, L, and M. (*See generally id.*). The Court reviews these objections in turn below.

### 1. Exhibits A and B: Police Report

Progressive relies on the police reports to explain what happened in each accident. (MSJ 1:19–2:1). In the first incident, Allan told the officer that the right tire of another vehicle made contact with the left side of his vehicle. (Oct. Police Report at 2, Ex. A to MSJ). The other driver continued driving and Allan followed her until she stopped at her place of work. (*Id.*). She told the officer that she did not stop because she looked in the rear-view mirror and did not see any damage to Allan's vehicle. (*Id.*). The officer reported that he saw no damage to the vehicle due to the contact being made with the tire. (*Id.*). In the second incident, the officer reported that Allan stopped for traffic, and the vehicle behind him impacted his vehicle. (Dec. Police Report at 2, Ex. C to MSJ). Allan objects to the use of the police reports and argues that they contain inadmissible hearsay. (Resp. 4:11–17).

The Federal Rules of Evidence contain a hearsay exception for public records, which states that the rule against hearsay does not exclude a "record or statement of a public office" that "sets out . . . a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel." Fed. R. Evid. 803(8)(A)(ii). Thus, under the public-records exception, "entries in a police report which result from the

officer's own observations and knowledge may be admitted" in a civil case. *United States v. Morales*, 720 F.3d 1194, 1202 (9th Cir. 2013). However, "any statements from third parties that are recounted in a police report involve an additional layer of hearsay that must be separately justified by another exception to the hearsay rule." *Jensen v. EXC, Inc.*, 82 F.4th 835, 846 (9th Cir. 2023)

Allan fails to specify which statement constitutes inadmissible hearsay in the report, but the officer's statements are proper evidence to be considered under FRE 803(8)(A)(ii) and his own statements are admissible as an opposing party's statements under FRE 801(d)(2). But the third-party driver's statement in the first accident, that she did not see any damage, is not admissible as a present sense impression, as argued by Progressive. (Reply 5:25–6:1). Her statement was made to the officer after the accident and after she drove to her place of work, and thus was not "nearly contemporaneous" with the accident itself. *See Bemis v. Edwards*, 45 F.3d 1369, 1373 (9th Cir. 1995) ("A present sense impression must be "nearly contemporaneous with the incident described and made with little chance for reflection."). Thus, the Court OVERRULES Allan's objection as to statements made by the officer or himself, but SUSTAINS the objection as to statements made by the third-party driver to the extent they are relied on for the truth of the matter asserted.

### 2. Exhibit C: Insurance Policy Declaration Sheet

Progressive attaches its Insurance Declaration Page for Allan as Exhibit C. It relies on the exhibit as evidence that Allan's policy included coverage for UIM with limits of $250,000 per person and $500,000 per accident. (MSJ 2:6–9). Allan argues that the document has not been authenticated and contains inadmissible hearsay, but also states that he does not dispute the coverage amount. (Resp. 4:18–21). Because Allan does not dispute the amount, which is the very information Progressive is relying on the Insurance Declaration Page to prove, Allan's objection is OVERRULED.

### 3. Exhibit D: Claim Notes

Progressive cites its Notes on Allan's claim for the sole purpose of stating that he reported the first claim on October 11, 2020. (MSJ 2:16–18). Allan argues that the exhibit has not been authenticated and contains inadmissible hearsay from multiple persons but fails to provide any further explanation. (Resp. 4:22–25). He does not dispute Progressive's assertion of the date on which he reported his first claim. Because the purpose and basis of Allan's objection is not readily apparent, his objection is OVERRULED.

### 4. Exhibit E: Photographs of Allan's Vehicle[1]

Allan also objects to the consideration of vehicle photos because they have not been authenticated and "Progressive has not explained when, where, or by whom the photographs were taken." (Resp. 5:1–3). In its Reply, Progressive states that the first seven photographs were taken after the second accident by Allan himself, which he sent to Progressive. (Reply 7:9–17). The photos produced by Allan himself are deemed authentic because they were produced by a party opponent. *See Fed. Trade Comm'n v. AMG Servs., Inc.*, 558 F. Supp. 3d 946, 958 (D. Nev. 2021). According to Progressive, the other photographs were taken at Gerber Collision & Glass during an inspection to provide Allan with an estimate of his vehicle damage. (Reply 7:9–17). But Progressive does not attempt to explain how the remaining photos were authenticated, if at all, and thus the objection is OVERRULED as to the first seven photos and SUSTAINED as to the remaining photos.

### 5. Exhibit F: Allan's Recorded Statement

Allan further objects that the recorded call filed manually as Exhibit F was not authenticated. (Resp. 5:4–7). Progressive replies that the recording was originally produced by

---

[1] Progressive notes a typographical error in the slip sheet attached to its MSJ that identifies the photographs as Exhibit F, but it intended the photographs to be labeled as Exhibit E. (Reply 2:17–21). The recording of Plaintiff's conversation with Progressive is Exhibit F. (*Id.*). For clarity, the Court will refer to the photograph exhibit as Exhibit E.

Allan himself as part of his initial Federal Rules of Civil Procedure Rule 26(a) disclosure. (Reply 7:21–22); (Allan's FRCP Disclosures, Ex. E to Reply, ECF No. 79-5). As noted above, because Allan produced the recording, it is deemed authentic and his objection is OVERRULED.

### 6. Exhibits G and H: Dr. Fishell's Medical Records and Explanation of Benefits

Allan also argues that Dr. Fishell's Medical Records and the Explanation of Benefits have not been authenticated. (Resp. 5:8–16). Allan produced the medical records as part of his post-accident demand, and he produced the Explanation of Benefits in his Second Supplemental FRCP 26(a) disclosures. (Reply 8:5–19); (Demand Letter, Ex. F to Reply, ECF No. 79-6); (Second Suppl. Initial Disclosures, Ex. G to Reply). The Court thus OVERRULES this objection.

### 7. Exhibit L: Claim Information

Allan's objection to the consideration of a Claim Information document is one sentence and states that the document "has not been authenticated and contains inadmissible hearsay." (Resp. 5:23–24). He has thus failed to explain his objection and it is not readily apparent. The objection is OVERRULED.

### 8. Exhibit M: Expert Report by Terry McNeil

Lastly, Allan objects to the consideration of Progressive's Expert Report by Terry McNeil. (Resp. 6:1–115). He argues that because the report is unsworn, it is inadmissible. (*Id.*). Allan is correct. Unsworn expert reports are inadmissible at summary judgment, and courts in the Ninth Circuit have routinely held as much. *See FNBN-RESCON I LLC v. Ritter*, No. 2:11-CV-1867-JAD-VCF, 2014 WL 979930, at *5 (D. Nev. Mar. 12, 2014) (collecting cases); *see also Shuffle Master, Inc. v. MP Games LLC*, 553 F. Supp. 2d 1202, 1210 (D. Nev. 2008) ("It clearly follows, and is well established, that an unsworn expert report is inadmissible."). The objection to the unsworn report is SUSTAINED.

### B. Breach of Contract

The Court now turns to address the merits of Allan's claims alleged against Progressive. Although Allan's Complaint is unclear, it appears that his breach of contract claim is premised on the dispute as to the value of his UIM claim and Progressive's reasonableness in offering $16,000 and $13,650.00 for the two accidents. (Resp. to Notice 5:1–14) (stating that a genuine issue of material fact exists as to the "value of the UIM claim – that is, the breach of contract claim"). To prevail on a breach of contract claim under Nevada law, the plaintiff must show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach. *Richardson v. Jones*, 1 Nev. 405 (1865).

Progressive argues that Allan cannot raise a genuine issue of material fact for his breach of contract claim because he has not produced any evidence that it breached the contract by refusing to pay him the limits of his UIM policy for each accident. (MSJ 14:15–117). Although the policy itself is not attached, the Complaint cites page 10 of the policy stating that UIM applies when the insured "is legally entitled to recover from the owner or operator of an uninsured motor vehicle or an underinsured motor vehicle because of bodily injury: 1. sustained by an insured person; 2. caused by an accident; and 3. arising out of the ownership, maintenance or use of an uninsured motor vehicle or an underinsured motor vehicle." (Compl. at 11). Progressive does not dispute that this is the true definition. Progressive did not attach a copy of the policy, nor provide further explanation as to why Allan was not legally entitled to a higher dollar amount. It failed to explain how it did not breach by extending UIM offers of only $16,000.00 and $13,650.00, per the definition provided in the policy.

The parties agree that there is a dispute as to the value of Allan's claims. (*See* Reply 13:5–10). This is a genuine issue for trial. Because Progressive provides no explanation pertaining to the actual terms of the contract, it has not met its initial burden and summary judgment is DENIED.

### C.     Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff also brings a claim for breach of the implied covenant of good faith and fair dealing, but his Complaint lacks any explanation as to what actions taken by Progressive allegedly violated the covenant.  It is also unclear whether Allan is alleging a contractual or tortious breach.  Based on his Response brief, however, it appears that he is alleging Progressive breached the covenant by delaying his payment and offering only $16,000.00 and $13,650.00 for his accidents. (*See* Resp. 18:20–20:23).  And because he primarily cites the legal standards for a tortious breach, involving a special relationship between an insurer and insured, the Court will construe his claim as one for tortious breach. *See Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 923 (Nev. 1991) ("[T]he difference between a tort action and contract action in good faith covenant cases [is] that the tort action requires a special element of reliance or fiduciary duty[.]").

Under Nevada law, an insurer breaches the duty of good faith when it refuses "without proper cause to compensate its insured for a loss covered by the policy." *U.S. Fid. & Guar. Co. v. Peterson*, 540 P.2d 1070, 1071 (Nev. 1975).  An insurer is without proper cause to deny a claim when it has an "actual or implied awareness" that no reasonable basis exists to deny the claim. *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1354 (Nev. 1986).  An unreasonable delay in payment can also constitute bad faith. *Guar. Nat. Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996).  "Generally, 'a bad-faith claim is subject to summary judgment if the defendant demonstrates that there was a genuine dispute as to coverage, because if the insurer had a reasonable basis to deny coverage,' the insurer is unlikely to know it was acting unreasonably." *Fernandez v. State Farm Mut. Auto. Ins. Co.*, 338 F. Supp. 3d 1193, 1200 (D. Nev. 2018) (quoting *Amini v. CSAA Gen. Ins. Co.*, 2016 WL 6573949, at *4 (D. Nev. Nov. 4, 2016)).  "It is not enough to show that, in hindsight, an insurer acted unreasonably; the plaintiff

must show that the insurer knew or recklessly disregarded that it was acting unreasonably." *Igartua v. Mid-Century Ins. Co.*, 262 F. Supp. 3d 1050, 1053 (D. Nev. 2017).

Here, Allan has not produced any evidence to demonstrate that Progressive unreasonably delayed payment. And on the contrary, Progressive produced evidence that it repeatedly sent almost identical letters to Allan's lawyer on seven different occasions requesting the information needed to investigate the claim. (Correspondence at DEF00830–50, Ex. C to Reply, ECF No. 79-3). Allan does not argue that his lawyer did in fact respond or provide the documentation requested, nor does he explain the lack of cooperation. Progressive sent letters for nine months until Mr. Roy finally sent medical records and a request for payment in September of 2021. The following month, Progressive paid the full amount of medical pay available. After that, because the medical records indicated a previous history of injuries, Progressive requested an examination under oath that occurred in February of 2022. Progressive continued its investigation after the examination and extended offers to resolve the UIM claims on August 2, 2022. The Court thus GRANTS summary judgment to Progressive on the claim to the extent it is premised on unreasonable delay.

The Court does, however, find a genuine issue of material fact as to whether Progressive knew or recklessly disregarded the unreasonableness of its $16,000 and $13,650 offers. Progressive argues that it conducted a "fair, prompt, and thorough investigation of Plaintiff's claims," which culminated in reasonable offers for $16,000 offered for the first accident and $13,650 offered for the second. (MSJ 15:14–19); (Progressive Offer at DEF001641, Ex. L to MSJ). The offer letter noted that Allan's medical records indicated a history of back pain complaints that pre-dated the accidents and that diagnostics showed degenerative issues such as osteophytes. (*Id.*). Progressive also noted that the accidents were minor, and that of the $128,253.00 in medical specials that Allan submitted, $44,570.00 were considered "reasonable, customary, and related to treatment." (*Id.*).

As Allan points out, however, three doctors noted that his injuries were related to the car accidents and not prior injuries. Dr. Michael Fishell of Advanced Pain Care found that Allan was involved in a motor vehicle accident in that required surgical correction, and that he had an aggressive physical lifestyle causing pain to his knees, but that these injuries had no association with the motor vehicle collision. (Advanced Pain Care Notes at DEF000997–98, Ex. G to MSJ). At his MRI in November, Dr. Ramon Soto of Complete Care Injury Center opined that Allan's injuries were moderate and stated that in his professional opinion, the injuries were the result of the motor vehicle collision. (*Id.*). And the doctor at the Spinal Rehabilitation Center further found that Allan's injuries were directly related to the accident. (Spinal Rehabilitation Center Notes at DEF001081, Ex. B to Reply). Further, Progressive offered to settle the claims for less than the $44,570.00 that it considered "reasonable, customary, and related to treatment," without explanation in its Motion. $44,570.000 is also significantly less than the $220.604.64 claimed by Allan for medical treatment and the $862,365.00 claimed for future medical treatment. (Plaintiff's Ninth Suppl. FRCP 26(a) Disclosures at 31–32, Ex. 2 to Resp., ECF No. 74-2).

"[A] jury question on insurer's bad faith arises when relevant facts are in dispute or when facts permit differing inferences as to the reasonableness of insurer's conduct." *United Fire Ins. Co. v. McClelland*, 780 P.2d 193, 197 (Nev. 1989). Based on the evidence provided by the parties, the Court cannot say that, as a matter of law, no reasonable juror could find that Progressive had an awareness, actual or implied, that it lacked reasonable basis supporting its offer amounts. Accordingly, Progressive's Motion for Summary Judgment is DENIED as to Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

### D.  Unfair Claims Practices Act

Allan alleges that Progressive violated three subsections of NRS 686A.310, which prohibit unfair practices in an insurer's claims-settlement process. Although his Complaint

does not specify which sections Progressive allegedly violated, his Response argues that sections e, f, and g, are most applicable. (Resp. 21:14–22).  Sections (e)–(g) prohibit the unfair practices of:

> (e) Failing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear.
> (f) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered.
> (g) Attempting to settle a claim by an insured for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying or made part of an application.

NRS 686A.310(1)(e)–(g).

Neither Allan's Complaint nor Response make any reference to advertising material, and Progressive also makes no mention of NRS § 686A.310(g), so the Court GRANTS summary judgment on that claim.  But due to the genuine issue of material fact as to the reasonableness of Progressive's offer, the Court DENIES summary judgment on Allan's claims for violations of NRS 686A.310(e)–(f).

### E.   Punitive Damages

Lastly, Progressive moves for summary judgment on Allan's ability to recover punitive damages.  "Nevada follows the rule that proof of bad faith, by itself, does not establish liability for punitive damages." *McClelland*, 780 P.2d at 198 (Nev. 1989).  Instead, a plaintiff must prove "by clear and convincing evidence that the defendant is 'guilty of oppression, fraud or malice, express or implied.'" *Bongiovi v. Sullivan*, 138 P.3d 433, 450–51 (Nev. 2006) (quoting NRS 42.005(1)).  Plaintiff does not present evidence that Progressive's conduct rose to the high level required for punitive damages.  Progressive reviewed photos, medical records, and conducted an interview of Plaintiff.  And when Progressive asked Allan about how he believed

he had been treated unfairly, his response was that the adjusters made it difficult to get his vehicle fixed, did not handle his claim in a professional manner, and made a very low payment offer when compared to the amount of his medical bills. (Allan Dep. 93:2–28, 103:11–18, 107:14–108:10, Ex. I to MSJ, ECF No. 62-9). These actions do not rise to the level required for punitive damages. *See Powers v. United Servs. Auto. Ass'n*, 962 P.2d 596, 604 (Nev. 1998) (finding punitive damages warranted when evidence existed that the insurance company made critical omissions in its investigative process and altered video evidence to support its decision for denial). Thus, Progressive's Motion to Summary Judgment is GRANTED as to this claim.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Progressive's Motion for Partial Summary Judgment, (ECF No. 62), is **GRANTED, in part, and DENIED, in part.** Allan's claims for breach of contract, breach of the implied covenant of fair dealing, and violations of NRS 686A.310(e)–(f), will proceed to trial.

**IT IS FURTHER ORDERED** that the parties will have thirty days from the date of this Order to file a jointly proposed pretrial order pursuant to LR 16-3(b) using the form provided in LR 16-4.

**DATED** this __9__ day of September, 2025.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT